UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| AARON TUCKER,<br><br>             Plaintiff,<br>   v.<br>CITY OF RICHMOND, LT. CHARLES WHITNEY, DT. STINA JOHANSON, AND DOES 1 to 50,<br><br>             Defendant.<br>_____/ | No. C 12-1829 MEJ<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) (DKT. NO. 4)** |

## I. INTRODUCTION

On February 17, 2012, Plaintiff Aaron Tucker filed a Complaint in Contra Costa County Superior Court against Defendants City of Richmond and Richmond police officers Charles Whitney and Stina Johanson. Dkt. No. 1, Compl. Plaintiff alleges that Defendants are liable for unlawfully entering and searching his home and using excessive force to unreasonably detain him. Based on these allegations, Plaintiff asserts both federal and state claims. Defendants removed the lawsuit to this Court and now move to dismiss parts of Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure (FRCP) 12(b)(6). Dkt. No. 4. Plaintiff has filed an Opposition, and Defendants have filed a Reply. Dkt. Nos. 11 and 12. After carefully considering the parties' arguments and the controlling legal authorities, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion as set forth below.

## II. BACKGROUND[1]

The relevant allegations as alleged in Plaintiff's Complaint are as follows.

In February 2010, the City of Richmond Police Department, with the assistance of a concussion grenade, stormed into Plaintiff's residence in Hercules, California. Compl. at 4. The grenade caused an "extremely loud, violent and disturbing" explosion. *Id*. Plaintiff alleges that approximately 15 armed Richmond police officers went inside his residence, and he was assaulted when his arms were roughly tied behind his back and handcuffed. *Id.* Officers then unreasonably detained Plaintiff while using excessive force, interrogated him, and conducted a search of his home. *Id.*

During the interrogation, police officers learned that Plaintiff and the other two residents in the home had lived at that address for approximately one year. *Id.* Police subsequently informed Plaintiff that they were searching for a suspect whose mother had lived at the home for two or more years. *Id.* After realizing that Plaintiff was not the individual who they were looking for, the officers released him and left the premises.[2] *Id.*

Plaintiff alleges that Defendants failed to conduct an adequate investigation to determine whether their targeted suspect resided at Plaintiff's residence at the time the warrants were issued. *Id.*

---

[1] Defendants ask the Court to take judicial notice of the arrest warrant, search warrant, return to search warrant, and affidavit to search warrant in connection with the underlying investigation in this matter. Dkt. No. 5. Because Plaintiff has not objected or challenged the authenticity of any of these documents, Defendants' request is GRANTED.

[2] Although the following facts were not included in Plaintiff's Complaint, Defendants have now explained that a valid arrest warrant and search warrant were issued for an individual believed to be residing at the address where Plaintiff lived. The warrants were obtained after an investigation regarding a gang-related shooting that occurred inside a church in Richmond, California in February 2010. Officers at the scene of the incident conducted interviews that led them to believe that Marcel Buggs was the suspected shooter. Buggs' criminal history report revealed that he was on probation in Contra Costa County. Officers contacted the Contra Costa County Probation Department, which provided Buggs' home address of record: the same address as Plaintiff's residence in Hercules, California. Based on this information, warrants were issued for Buggs and a search of his residence. After the warrants were executed, officers realized that Buggs' address with the Probation Department was stale.

Based on that alleged obligation, Plaintiff claims the information provided to the magistrate judge who issued the warrants was "wrong, inadequate, vague and/or omitted critical information which otherwise would not have given reasonable and/or probable cause for a judge to issue a search warrant and/or the raid . . . ."[3] *Id.* Plaintiff thus alleges that the actions taken by Defendants during the subject incident violated his Fourth Amendment rights and has brought claims under 42 U.S.C. § 1983 for (1) unlawful search, (2) unreasonable detention, and (3) excessive use of force. *Id.* Defendants only move to dismiss Section 1983 claims "stemming from the issuance of the warrant. The motion expressly excludes the Fourth Amendment claim based on *whether the search was conducted in a reasonable manner*, including whether excessive force was used in applying handcuffs." Dkt No. 12 at 1 (emphasis added).[4]

Plaintiff additionally asserts the following state law claims: (1) false imprisonment, (2) battery, (3) assault by explosion, (4) intentional infliction of emotional distress (IIED), and (5) negligent infliction of emotional distress (NIED). Compl. Defendants only move to dismiss the state law claims for false imprisonment, IIED, and NIED.

---

[3] Plaintiff alleges this in his Complaint based on the assumption that valid warrants had been issued, even though he was not aware of any such warrants at the time the Complaint was filed.

[4] There is some confusion between the parties as to the scope of Defendants' Motion. Plaintiff's Opposition assumes that Defendants are moving against each of his claims. That is not the case. As Defendants explain at the start of their Motion: "What properly remains in this case after ruling on this motion are the state and federal claims related to whether excessive force was used in executing the search warrant. While the entry into the home was lawful as a matter of law, plaintiff's claims that the police *executed the warrant in an unreasonable manner cannot be resolved at this stage of the litigation*." Dkt No. 4 at 1 (emphasis added). The Court, however, notes that some arguments in the Motion contradict this explanation from Defendants and appear to expand the scope of their Motion. *See id.* at 6 (arguing that Plaintiff's detention was reasonable). The Court does not consider such arguments, especially because Defendants reiterate in their Reply that they are only moving against the claims that stem from the "issuance of the warrant." Dkt. No. 12 at 1. Accordingly, the only issue considered with respect to Defendants' Motion on Plaintiff's Section 1983 claim is whether Defendants can be held liable for not conducting a further investigation into the reliability of the address in question. Plaintiff's claims that Defendants searched unreasonably or used unreasonable force to detain him are not considered and may move forward.

3

### III.   LEGAL STANDARD

A court may dismiss a complaint under FRCP 12(b)(6) when it does not contain enough facts to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### IV.   DISCUSSION

The Court addresses the Defendants' arguments in turn below.

**A.  Section 1983 Claims**

With respect to the issuance of the warrants — which, as explained earlier, is the only issue the Court considers here in relation to Plaintiff's federal claims — Plaintiff asserts a Section 1983 claim on the grounds that Defendants "failed to conduct even a cursory investigation to ensure that they would not violate the rights or safety of others." Compl. at 5. Plaintiff's Opposition explains

4

the issue as follows: "The question in this case is whether a police officer in Defendants' position should have conducted a reasonable investigation to determine the *correct* address *for the suspect*." Dkt. No. 11 at 7. Plaintiff essentially argues that a "reasonably well-trained officer" would have carried out an investigation to determine whether the targeted suspect's address obtained from the Probation Department was stale, and failing to do so violated Plaintiff's constitutional rights. *Id.* at 9.

The parties agree that qualified immunity shields a government official from liability under Section 1983 "for conducting an unconstitutional search if he is acting on the basis of a facially valid warrant." *Barlow v. Ground*, 943 F.2d 1132, 1139 (9th Cir. 1991); *accord Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986). When police officers obtain a warrant before executing a search, they are ordinarily entitled to rely on the issuing judge's determination that probable cause exists. *United States v. Spencer*, 530 F.3d 1003, 1006-07 (D.C. Cir. 2008). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of [qualified] immunity be lost." *Malley*, 475 U.S. at 344-45.

Defendants argue that the issuance of facially valid search and arrest warrants entitles them to qualified immunity for any alleged unlawful entry and search. *Id.* at 4-5. Defendants further contend that Plaintiff offers no authority to support his position that the warrants were invalid because "probable cause necessarily requires investigation and confirmation of a suspect's address from multiple official sources." Dkt. No. 11 at 5. According to Defendants, "the Fourth Amendment cannot be construed to require corroboration of the address provided by the Probation Department" when such a source would be reasonably relied upon by well-trained officers. *Id.* Moreover, Defendants allege that to prove a facially valid warrant is in violation of the Fourth Amendment, Plaintiff must show that Defendants deliberately or recklessly made false statements or omissions that were material to the finding of probable cause under the doctrine of judicial deception. Dkt. No. 4 at 6. Defendants argue that Plaintiff has made no such showing of judicial deception here, as the "Complaint alleges no more than negligence in the investigation and submission of a stale address to the judge." *Id.* at 6.

The Court agrees with Defendant's position. The affidavit in this case shows that officers

sought warrants for the address and person in question after the Contra Costa County Probation Department confirmed that suspect Marcel Buggs was on active probation and that Plaintiff's address was his last home address of record. Dkt. No. 5, Ex. A. Plaintiff has not cited any authority that would require officers to further investigate and verify an address that was provided to them by a reliable source and then ratified by a magistrate judge. And a ruling to the contrary would create a standard for officers that would not be workable.[5] Plaintiff's Section 1983 claim stemming from the issuance of the warrants — specifically, that Defendants had to conduct an investigation to verify the suspect's address after the warrant was issued — is therefore not actionable, and Defendants' Motion on this issue is GRANTED WITH PREJUDICE.[6]

## B. State Law Claims

Defendants next move to dismiss Plaintiff's state law claims for false imprisonment, IIED, and NIED, which stem from Defendants' conduct during the execution of the warrants.[7] Dkt. No. 4 at 7. Defendants argue that these claims should be dismissed under California Code of Civil Procedure § 262.1 (Section 262.1) and California Government Code § 821.6 (Section 821.6).

---

[5] Plaintiff argues that "a reasonably well-trained officer, in the Defendants [sic] position, would have carried out a proper investigation to determine the identity of the residents of the home in which they were going to knock down the door, detonate a concussion grenade and use unreasonable physical force to detain and interrogate the occupants." Dkt. No. 11 at 9. This argument fails to understand and grasp police practices and procedure. The 15 officers that entered Plaintiff's residence were unlikely to know anything about the targeted suspect or the residents of house they were searching. Instead, they were given orders by their superiors that a magistrate judge had issued warrants that they were required to execute — warrants which Plaintiff does not claim to be the subject of a judicial deception claim. It is true that the officers must be reasonable in the execution of these warrants, but they cannot be required to ignore their superiors' orders, question the details of the warrants, or delay the execution of the warrants by conducting their own investigation to corroborate them.

[6] This Court need not address whether Defendants made a material misrepresentation in connection with the issuance of the facially valid warrants because Plaintiff has not alleged facts sufficient to support a claim for judicial deception, and, in fact, states he does not assert such a claim. Dkt. No. 11 at 7.

[7] Plaintiff also asserts state law claims for battery and assault by explosion. But Defendants do not move to dismiss either of these claims, and the Court does not address them.

6

### 1. California Code of Civil Procedure § 262.1

Defendants first argue that Plaintiff's false imprisonment claim should be dismissed under Section 262.1, which provides that an officer "is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued." Cal. Civ. Proc. Code § 262.1. Courts have held that the "issuance of a search warrant implicitly carries with it the limited authority to detain the occupants of the premises while a search is carried out." *Wood v. Emmerson*, 155 Cal.App.4th 1506, 1526 (2007) (finding that police officers did not violate state or federal civil rights of occupants during execution of a facially valid search warrant); *see also Martin v. Cnty. of San Diego*, 650 F.Supp.2d 1094, 1106 (S.D. Cal. 2009) (holding that an officer is immune from liability for the state law tort of false arrest if the officer "acted without malice in connection with the issuance of the warrant"). Defendants further argue that there can be no state law liability for false arrest based on detention during the execution of the search because Plaintiff does not dispute the facial validity of the warrants in the Complaint and has not alleged facts constituting malice under state law.

Plaintiff provides no opposition to Defendants' Section 262.1 argument. The Court finds the above authorities and arguments on point and instructive, and Plaintiff's false imprisonment claim against Defendants is therefore DISMISSED WITH LEAVE TO AMEND.

### 2. California Government Code § 821.6

Defendants next argue that they are not liable for false imprisonment, IIED, and NEID under the immunity provisions of California Government Code §§ 815.2 and 821.6.[8] "Pursuant to these Sections, public employees, acting within the scope of their employment, and the public entity, are

---

[8] Section 815.2 provides that "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this Section, have given rise to a cause of action against that employee or his personal representative [;] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Section 821.6 provides that "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

7

immune from tort liability for any acts done by the employees in preparation for formal judicial or administrative proceedings, including investigation of alleged wrongdoing, and for any acts done to institute and prosecute such formal proceedings." *Hansen v. Cal. Dept. of Corr. & Rehab.*, 171 Cal. App.4th 1537, 1547 (2008) (citing *Amylou R. v. Cnty. of Riverside*, 28 Cal.App.4th 1205, 1209-10 (1994)). The California Supreme Court has interpreted these immunities narrowly and found them to provide protection for public employees from liability for only malicious prosecution claims. *Sullivan v. Cnty. of Los Angeles*, 12 Cal.3d 710, 719 (1984) (finding that the "history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for malicious prosecution and not for false imprisonment"); *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 752-53 (1997). Plaintiff asks this Court to follow the California Supreme Court's narrow interpretation of Section 821.6 and hold that these immunities do not apply to state law claims for false imprisonment, IIED, and NIED.

The California Supreme Court's holding, however, has been distinguished by numerous California Court of Appeal decisions which find that Section 821.6 immunity applies to claims other than malicious prosecution, including negligent and intentional infliction of emotional distress. *See Amylou R.,* 28 Cal.App.4th at 1209-10 (holding that the County was immune from liability under Section 821.6 for the actions of the investigating officers because the injuries were caused by acts committed by the officers while instituting or prosecuting a judicial or administrative proceeding and investigation is an "essential step" toward the institution of formal proceedings); *Baughman v. State of Cal.*, 38 Cal.App.4th 182, 186 (1995) (holding that Section 821.6 immunized officers from conversion claims because under "Government Code 821.6, the officers' actions during the investigation were cloaked with immunity, even if they had acted negligently, maliciously or without probable cause in carrying out their duties"); *Kemmerer v. Cnty. of Fresno*, 200 Cal.App.3d 1426, 1435-37 (1988) (finding the County was immune from liability for intentional infliction of emotional distress). Defendants urge this Court to follow the broad position of the Court of Appeals in holding that Section 821.6 provides immunity for other tort claims besides malicious prosecution claims.

This Court agrees with the California Supreme Court's decision in *Sullivan* and finds that Section 821.6 only applies to claims for malicious prosecution. A recent law review article has analyzed the inconsistent positions taken by California courts on this issue and explained why the better approach — which this Court adopts — is to interpret Section 821.6 as only immunizing public employees' conduct with respect to claims stemming from the institution or prosecution of a judicial proceeding. *See* Frank J. Menetrez, *Lawless Law Enforcement: The Judicial Invention of Absolute Immunity for Police and Prosecutors in California*, 49 Santa Clara L. Rev. 393 (2009) (summarizing the case law with respect to Section 821.6 and explaining how the immunity should be applied in the future). The article explains that "the misguided means that the [Court of Appeal] adopted — application of an absolute immunity to all investigative conduct — has the perverse consequence of barring liability even for conduct that would constitute child abuse, as long as it is done by a public employee." *Id.* at 423. "One of the most striking features of the Court of Appeal's analysis in these cases is the court's seemingly total lack of awareness of the breadth and severity of the doctrine it was creating." *Id.* at 425. For example, "if an accused child molester pled guilty to simple assault in exchange for dismissal of all other charges, but the prosecutor later announced to the press, maliciously and without probable cause, that the accused had pled guilty to child molestation, section 821.6 would again provide an absolute bar to liability." *Id.* This Court agrees that interpreting Section 821.6 to apply to all tort claims would create "a regime of lawless law enforcement in California" by giving "the state's law enforcement authorities a license to kill or to do any other damage that strikes their fancy, even maliciously and without probable cause, as long as they do it in the course of investigating a crime." *Id.* at 426; *see also Dinius v. Perdock*, 2012 WL 1925666, at *9 (N.D. Cal. May 24, 2012). For these reasons, this Court is not persuaded by Defendants' argument and follows *Sullivan* to find that Section 821.6 does not automatically immunize Defendants' investigatory conduct against Plaintiff's IIED and NIED claims.[9] The

---

[9] This result does not mean that future plaintiffs may plead around Section 821.6 immunity by simply alleging claims other than malicious prosecution. "If it did, then the immunity would indeed provide little meaningful protection, because plaintiffs would always be able to recast their complaints in terms of defamation, [IIED], interference with business relations, or the like."

9

Defendants' Motion with respect to these state law claims is DENIED.

## IV.  CONCLUSION

For the reasons sets forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. No. 4) as follows.

The Court **GRANTS** Defendants' Motion with respect to Plaintiff's Section 1983 claim stemming from the issuance of the warrants and this claim is **DISMISSED WITH PREJUDICE**.

The Court **GRANTS** Defendants' Motion with respect to its Section 262.1 argument. Plaintiff's state law claim for false imprisonment is **DISMISSED WITHOUT PREJUDICE**.  If Plaintiff wishes to amend this claim, he must file an amended complaint by **July 20, 2012**.

The Court **DENIES** Defendants' Motion with respect to its Section 821.6 argument.

**IT IS SO ORDERED.**

Dated: July 2, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

---

Menetrez, 49 Santa Clara L. Rev. at 419.  But this would not be possible since malicious prosecution is "the only tort action that can be based on the institution or prosecution of a judicial or administrative proceeding." *Id.*